### THOMAS SULLIVAN *vs.* MICHAEL SULLIVAN.

A wife is not a competent attesting witness to a will which contains a devise to her husband.

GRAY, J. This is an appeal from a decree of Mr. Justice Wells, by which a decree of the probate court, allowing as the will of Margaret Sullivan an instrument which contained a devise to Thomas Sullivan, and to which his wife was one of the three attesting witnesses, was reversed; and the only question is whether upon these facts she was a competent attesting witness to the will.

By the law of this Commonwealth, a will must be attested by three competent witnesses, that is to say, witnesses who at the time of the attestation would be competent by the rules of the common law to testify concerning the subject matter. *Hawes* v. *Humphrey*, 9 Pick. 350. Rev. Sts. *c.* 62, § 6, and commissioners' note. Gen. Sts. *c.* 92, § 6. *Sparhawk* v. *Sparhawk*, 10 Allen, 155, 156. And "all beneficial devises, legacies and gifts, made or given in any will to a subscribing witness thereto, shall be wholly void, unless there are three other competent witnesses to the same." Gen. Sts. *c.* 92, § 10.

It is admitted that a wife cannot be deemed a competent witness to a will containing a valid devise to her husband. But it is contended that, within the reason and effect of the section last quoted, a devise to her husband is a beneficial devise to her, and is therefore void, leaving her a competent attesting witness to the will, and the will itself valid in all other respects. And this position, though doubted by a majority of the supreme court of Connecticut in *Fortune* v. *Buck*, 23 Conn. 1, is supported by earlier decisions in New York and Maine. *Jackson* v. *Woods*, 1 Johns. Cas. 163. *Jackson* v. *Durland*, 2 Johns. Cas. 314. *Winslow* v. *Kimball*, 25 Maine, 493.

But with great respect for the learning and ability of the courts which made those decisions, and after carefully weighing the arguments in support of the construction contended for, we are unanimously of opinion that it is founded rather upon a conjecture of the unexpressed intent of the legislature, or a consideration of what they might wisely have enacted, than upon a sound judicial exposition of the statute by which their intent has been manifested. The only devises which the statute declares to be void are beneficial devises to a subscribing witness. It does not avoid even a devise to a subscribing witness, which gives him no beneficial interest, as, for instance, a devise to an executor, for the exclusive benefit of other persons. *Wyman* v. *Symmes*, 10 Allen, 153. 1 Jarman on Wills, 65. It does not avoid any devise to and for the benefit of any person other than a subscribing witness, even if a subscribing witness would incidentally take some benefit from the devise. In order to maintain the position contended for, it would

be necessary to declare void, not merely the interest which the wife, who was a subscribing witness, would take, by way of dower or otherwise, in the property devised to her husband, but also the whole devise to and for the benefit of the husband himself, who was not a subscribing witness, and whose estate the statute does not assume to reach.

Our conclusion is fortified by a consideration of the history of the legislation upon this subject in England and in this Commonwealth.

The English statute of frauds required wills devising lands to be attested and subscribed in the presence of the devisor by three or four credible witnesses. St. 29 Car. II. *c.* 3, § 5. And that provision was reënacted here in the first year of the Province. Prov. St. 4 W. & M. (1692–3,) *c.* 15, § 3; 1 Mass. Prov. Laws, (State ed.) 46; Anc. Chart. 235.

In *Holdfast* v. *Dowsing*, 2 Stra. 1253, where a testator charged all his estate, real and personal, with legacies to one of the subscribing witnesses and to his wife, and with an annuity to the wife, the court of king's bench held that the statute of frauds certainly meant that the "credible witnesses" should not be such as claimed a benefit by the will; and that, even if the tender to the husband, at the trial, of the amount of the two legacies, would remove the objection on that ground, (which the court thought it would not,) yet the charge upon the real estate of the annuity to the wife made the husband an incompetent witness. Although the doctrine as to the legacies has been since controverted in England, upon the ground that the competency of the witnesses was to be determined at the time of the proof, and not at that of the execution of the will, the incompetency of either husband or wife to be a witness to a devise to the other, which the witness could not release, has never been doubted. *Windham* v. *Chetwynd*, 1 Burr. 414, 424; *S. C.* 1 W. Bl. 95, 100. Bul. N. P. 265. The case of *Holdfast* v. *Dowsing* was taken by writ of error to the exchequer chamber, and after argument and before judgment there was compromised by the parties; and gave occasion to the St. of 25 Geo. II. *c.* 6. 1 W. Bl. 8. 1 Ves. Sen. 503. 2 Bl. Com. 377. The reason of this, as stated by Sir William Black

stone in his Commentaries, was, that the determination in the king's bench " alarmed many purchasers and creditors, and threatened to shake most of the titles in the kingdom that depended upon devises by will ; " because it " would not allow any legatee, nor by consequence a creditor, where the legacies were charged on the real estate, to be a competent witness to the devise."

The St. of 25 Geo. II. *c.* 6, accordingly provided, in § 3, that to the execution of wills already made any attesting witness to whom any legacy was given, whether charged upon lands or not, might be admitted as a witness, upon payment, release or tender of his legacy; and, by §§ 1, 2, that in future wills any attesting witness " to whom any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate " (except charges on lands for payment of debts) " shall be thereby given or made," should be admitted as a witness to the will, within the intent of the statute of frauds, and " such devise, legacy, estate, interest, gift or appointment shall, so far only as concerned such person attesting the execution of such will, or any person claiming under him, be utterly null and void ; " and that charges of debts upon lands should not make any creditor an incompetent witness. All these provisions were reenacted in our St. of 1783, *c.* 24, §§ 11–13 ; and the provision of St. 25 Geo. II. *c.* 6, § 3, and St. 1783, *c.* 24, § 13, for removing the interest of a witness by payment, release or tender, was omitted in the revision of our statutes in 1836. But neither the St. of 25 Geo. II., nor the St. of 1783, contained any provision as to devises to the wife or husband of an attesting witness, notwithstanding the general attention which had been called to the subject by the case of *Holdfast* v. *Dowsing.*

In 1822, a case was brought before the court of king's bench, in which a testator devised, upon the determination of an estate for life, an estate in fee to the wife of one of the attesting witnesses, and the wife died before the determination of the life estate. It was argued, that, if before the St. of Geo. II. the husband would have been an incompetent witness, the clear intent of that statute was to restore the competency of the attesting witness in all cases of benefit arising to him under the will, and to avoid the

will "so far only" as concerned the person attesting the execution, or any person claiming under him; and since that statute, therefore, no will could be void by reason of interest arising under it to any attesting witness, further than regarded the interest of such witness or any person claiming under him; and consequently the will was duly attested. To which it was answered that the St. of Geo. II. applied only to cases where the interest taken under the will was destroyed by the statute itself; that the husband took no estate or interest under the will; that his wife indeed took an estate under the will, and by operation of law he in right of his wife derived a beneficial interest from that estate, which they might have sold during her life, and which would have given him an estate by the curtesy if she had survived the life tenant: but that the estate of the wife was not destroyed by the statute, and consequently the derivative beneficial interest, which the husband took in right of his wife only, was not extinguished; and that, independently of the question of interest, it was a general rule that a husband or wife could not in any case be a witness for the other, as was held in *Davis* v. *Dunwoody*, 4 T. R. 678. And the court was of opinion that the will was not duly attested *Hatfield* v. *Thorp*, 5 B. & Ald. 589. The point thus adjudged upon the application of the St. of Geo. II. is summed up by Mr. Jarman as follows: "That it applied only when the witness took a direct interest under the will, and not when it arose consequentially. Thus in *Hatfield* v. *Thorp*, where one of the three attesting witnesses to a will was a husband of a devisee in fee of a freehold estate, and would *jure uxoris* have derived an interest in the lands, it was held that the devise was not within the statute, and consequently that the attestation was insufficient." And such continued to be the law of England until 1837, when the St. of 1 Vict. *c.* 26, extended the disqualification to take beneficially under the will to the husband or wife of the attesting witness. 1 Jarman on Wills, 65–67. In neither of the revisions of our own statutes in 1836 and 1860, is any express provision introduced upon this point. Rev. Sts. *c.* 62, § 6. Gen. Sts. *c.* 92, § 6. And the statutes removing the objections to the competency of witnesses on the grounds of interest and of the relation of husband

and wife are expressly declared not to apply to attesting witnesses to a will or codicil. Gen. Sts. *c.* 131, § 15. St. 1870, *c.* 393, § 2.

The result is, that the decree reversing the decree of the probate court is to be affirmed, and the

*Will not admitted to probate.*